IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER B. GOINS , | ) | CASE NO. 4:08 CV 1800 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE ECONOMUS |
| v. | ) | |
| | ) | |
| MICHAEL J.ASTRUE, | ) | MAGISTRATE JUDGE McHARGH |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Christopher B. Goins' application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION and PROCEDURAL HISTORY

On March 18, 2005, Plaintiff filed an application for Supplemental Security Income benefits, alleging a disability onset date of January 1, 1981 (Tr. 98). Plaintiff was born on July 18, 1972, which made him 35 years old at the time of the ALJ's determination and a "younger individual" for purposes of the Social Security regulations. *See* 20 C.F.R. § 416.963 (Tr. 120).

1

Plaintiff has a ninth grade education and was in special classes during school (Tr. 434).  He has

no past relevant work experience (Tr. 104).

Plaintiff's applications for benefits were denied initially and upon reconsideration (Tr.

53-55, 58-60).  Plaintiff requested a hearing, and on December 3, 2007, he appeared with

counsel and testified before Administrative Law Judge Mark M. Carissimi (the "ALJ") (Tr. 423-

69).  On February 27, 2008, the ALJ issued a written decision denying Plaintiff's claim for

benefits (Tr. 10-22).  The ALJ determined at Step Three of the five-step sequential evaluation[1]

that Plaintiff met Listings 12.08 and 12.09 when his substance use was considered; however, the

ALJ further determined that, absent the substance use, Plaintiff retained the residual functional

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step
sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a),
416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)     If a claimant is doing substantial gainful activity – i.e., working for profit – he is
not disabled.

    (2)     If claimant is not doing substantial gainful activity, his impairment must be severe
before he can be found to be disabled.

    (3)     If claimant is not doing substantial gainful activity and is suffering from a severe
impairment that has lasted or is expected to last for a continuous period of at least
twelve months, and his impairment meets or equals a listed impairment, claimant
is presumed disabled without further inquiry.

    (4)     If claimant's impairment does not prevent him from doing his past relevant work,
he is not disabled.

    (5)     Even if claimant's impairment does prevent him from doing his past relevant
work, if other work exists in the national economy that accommodates his
residual functional capacity and vocational factors (age, education, skills, etc.), he
is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

capacity ("RFC") to perform light work that was simple and routine; required only superficial interaction with coworkers and occasional interaction with the public; and did not require negotiation or confrontation with either coworkers or the public (Tr. 17).  Based on this RFC, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, and therefore, was not disabled (Tr. 21-22).  The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 3-5).  On appeal, Plaintiff claims that the ALJ erred: (1) by improperly disregarding the opinion of Dr. Pondillo; and (2) in his determination that Plaintiff would not be disabled but for his substance use since this is a medical finding, and the ALJ made his determination without the aid of a medical expert or other medical testimony.

## II.  DISABILITY STANDARD

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. § 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. § 416.905.

## III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15,

2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).* Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. See *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See *Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  ANALYSIS

### I.    Whether the ALJ Erroneously Discarded Dr. Pondillo's Opinion

Plaintiff claims that the ALJ erred by rejecting Dr. Pondillo's opinion without any basis for doing so.  Dr. Pondillo opined that Plaintiff's symptoms caused him considerable distress and that Plaintiff's judgment and interpersonal functioning were impaired (Tr. 154).  He further opined that Plaintiff would have difficulty sustaining a routine and probably would be unable to meet quality standards and production norms, due to his limited intellectual functioning (Id.).

Based on results from the WAIS-III – which revealed Plaintiff's Verbal IQ to be 62, his Performance IQ to be 65 and his Full Scale IQ to be 61 – Dr. Pondillo diagnosed Plaintiff with mild mental retardation (Id.).  He also diagnosed Plaintiff with bipolar disorder (Id.).  Dr. Pondillo further opined that Plaintiff was unemployable and that he should be placed on Social Security Disability (Id.).

Generally, treating physicians' opinions are granted "controlling weight."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007); 20 C.F.R. §404.1527(d)(2).  "A treating source, accorded the most deference by the SSA, has not only examined the claimant but also has an '*ongoing treatment relationship*' with her consistent with accepted medical practice."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. §404.1502) (emphasis added).

The record reflects that Dr. Pondillo evaluated Plaintiff on or about September 6, 2005 (Tr. 150-54).  There are no medical records affirmatively indicating that Dr. Pondillo treated Plaintiff further or that he saw him again on any other occasion.  Although Plaintiff testified that he calls Dr. Pondillo "pretty regularly," and that he has seen him at least four times, (tr. 454), there is no indication in the record as to when these alleged other talks and visits occurred relative to when Dr. Pondillo completed his assessment, or that Dr. Pondillo had the ongoing treatment relationship necessary to qualify his as a treating physician at the time he completed his assessment.  Without more from Plaintiff on this point, the Court is hesitant to conclude that Dr. Pondillo qualifies under the regulations as a treating physician; instead, Dr. Pondillo most likely is or was a "non-treating" source who examined Plaintiff but does not have, or did not have, an ongoing treatment relationship with Plaintiff.  *See* 20 C.F.R. §404.1502; *Smith v.*

*Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (holding that two doctors – one of whom examined the claimant only once and wrote a single "physical capacity evaluation," and the other of whom "examined [the claimant], completed a medical report, prescribed and refilled back pain medication, and denied additional medication when Smith returned seeking more" – were not "treating physicians" for purposes of the treating physician rule); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 507 (6th Cir. 2006) (holding that a doctor who examines a claimant only once does not qualify as a "treating physician" and noting that the relevant question is not whether a doctor might have become a treating source at some later point in time, but rather "whether [the doctor] had the ongoing relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*") (emphasis in original).  Accordingly, the Court finds that the ALJ was not required to afford Dr. Pondillo's opinion the weight normally afforded that of a treating physician, and he was not bound by the procedural regulations that require an ALJ to give "good reasons" for rejecting the opinion of a treating physician.  *See Saal v. Comm'r*, 2009 WL 3153163 at *7 (W.D. Mich. Sept. 19, 2009) (citing *Smith*, 482 F.3d at 857-76).  Nevertheless, the ALJ adequately explained why he gave little weight to Dr. Pondillo's opinion.  The ALJ stated:

> Although Dr. Pondillo's documentation describes severe limitations that led him to opine that the claimant was unemployable, there was no indication in his report of the claimant's substance use.  The claimant testified that he drank a case of beer in one setting [sic]; thus, his significant use of alcohol would be pertinent in a psychological evaluation, and distinguished by a diagnosis indicative of alcohol.  However, there is no documentation or diagnosis related to substance use in Dr. Pondillo's evaluation.  Thus, based on the evidence, it is only plausible that the claimant did not relate his use of alcohol to Dr. Pondillo.
>
> Furthermore, the claimant's IQ scores were lower from tests taken only months earlier.  There was no documentation of an organic disorder or injury which would account for the reduction in scores in such a short period of time; therefore

> I do not accept the scores as reliable due to the claimant's significant substance use

(Tr. 15-16).

While there may be other possible explanations as to why Dr. Pondillo's report does not contain any reference to Plaintiff's substance abuse, that Plaintiff did not relate his substance abuse to Dr. Pondillo certainly is one plausible explanation. If Plaintiff had related the type of heavy drinking he described during the hearing, one would imagine that references to it would appear somewhere in Dr. Pondillo's assessment. Moreover, as the ALJ seems to imply in his written decision, if Plaintiff in fact did not relate his substance abuse to Dr. Pondillo during the evaluation, then Dr. Pondillo's assessment could be a reflection of Plaintiff's "gross" limitations – that is, a reflection of *all* of Plaintiff's limitations, including those that result from Plaintiff's substance abuse. This possibility assumes both that Plaintiff was using substances at the time of Dr. Pondillo's evaluation and that Plaintiff did not tell Dr. Pondillo about his substance abuse. If both of those assumptions were the case, then Dr. Pondillo's assessment would not inform the ALJ's materiality analysis because it would not reflect either what limitations Plaintiff's substance abuse cause him or what "net" limitations Plaintiff has when he is not abusing substances. This would present a sound reason for discounting Dr. Pondillo's opinion regarding Plaintiff's disability. Of course, it also is a possibility that Plaintiff did not relate his substance abuse to Dr. Pondillo because he was sober at the time, in which case the ALJ's explanation for rejecting Dr. Pondillo's opinion would make little sense. However, the reviewing court's role is to determine whether substantial evidence supports the findings of the ALJ, and the above scenario certainly is a viable possibility, particularly in light of Plaintiff's testimony at the hearing regarding his heavy alcohol use (Tr. 446-48). "Of course, when a record presents

7

substantial evidence supporting two contrary conclusions, a reviewing court must affirm the finding of the Commissioner." *Wines v. Comm'r of Soc. Sec.*, 268 F.Supp.2d 954, 960 (N.D. Ohio 2003) (citing *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the Court finds that the ALJ did not err with respect to his treatment of Dr. Pondillo's opinion because Dr. Pondillo is not a treating physician, and in any case, the ALJ adequately explained why he disregarded Dr. Pondillo's opinion.

## II.    Whether the ALJ's Finding that Plaintiff's Substance Abuse Contributes Materially to his Disability is Supported by Substantial Evidence

Under 42 U.S.C. § 423(d)(2)(C), an individual may not be considered to be disabled if alcoholism or drug addition is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935 details the requirements for evaluating a claimant's disability claim when the medical record indicates that the claimant abuses alcohol and/or drugs. First, the ALJ must determine whether the claimant is disabled.  Second, if the ALJ finds that the claimant is disabled, the ALJ must determine whether drug or alcohol abuse is a contributing factor that is material to the claimant's disability.  In making this determination, the ALJ is required to "evaluate which of [the claimaint's] current physical and mental limitations, upon which [he] based [his] current disability current disability determination, would remain if [the claimant] stopped using drugs or alcohol, and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 416.935(b)(2).  If the claimant would be disabled without using drugs or alcohol, then the claimant's substance abuse is not material to her disability. *Id.* at § 416.935(b)(2)(ii).  However, if the claimant would not be disabled apart from her drug and alcohol abuse, then her substance abuse is material and the ALJ cannot award benefits. *Id.* at § 416.935(b)(2)(i).  An ALJ should identify some medical evidence in support of

his determination of materiality.  *See Hopkins v. Comm'r*, 96 Fed.Appx. 393, 395 (6th Cir. 2004) (explaining that the Commissioner is required to determine, based on the medical evidence, whether a claimant is disabled without regard to his substance abuse).

The ALJ in this case engaged in a detailed and specific analysis with respect to this issue that followed the steps prescribed above for determining whether a claimant's alcohol or drug addiction is a contributing factor material to the determination of disability.  At Step One, the ALJ determined that Plaintiff had not been engaged in any substantial gainful activity since his application date (Tr. 12).  The ALJ determined at Step Two that Plaintiff has the following severe impairments: antisocial personality disorder; borderline intellectual functioning; major depressive disorder; polysubstance  abuse; anxiety disorder; ischemic peripheral neuropathy; and cerebral arthrosclerosis (Tr. 12).  At Step Three, the ALJ determined that Plaintiff's impairments – *including* his substance abuse disorder – met Listings 12.08 and 12.09.  In making this finding, the ALJ concluded based on Plaintiff's testimony and the other record evidence that Plaintiff had "marked" limitations in his abilities to maintain social functioning and to maintain concentration, persistence and pace, and that Plaintiff has had one or two episodes of decompensation (Tr. 13). Because the ALJ found that Plaintiff met Listings 12.08 and 12.09, he implicitly – if not explicitly –  found that Plaintiff was disabled, thereby concluding the first portion of the materiality analysis.

The ALJ then returned to Step Two to continue the second portion of materiality analysis – i.e., whether Plaintiff would remain disabled if he stopped using substances.  At Step Two, the ALJ determined that "if the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities;

therefore the claimant would continue to have a severe impairment or combination of impairments" (Tr. 16).  However, the ALJ then determined at Step Three that if the claimant stopped using substances, he would not have an impairment or combination of impairments that met or equaled a Listing.  The ALJ then specifically stated that Plaintiff would no longer meet the requirements of the Listings "[b]ecause the remaining limitations would not cause two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation" (Tr. 16).  The ALJ then continued to Step Four of the sequential analysis to determine what Plaintiff's residual functional capacity would be if he stopped using substances.

In determining what limitations would remain were Plaintiff ceased using substances, the ALJ relied upon the opinions of Dr. Irilli, a consultative evaluator, and Dr. Haskins, a state reviewing psychological consultant, and upon evidence from the time Plaintiff was incarcerated that suggested Plaintiff was capable of various types of work (Tr. 17-21).

Dr. Irilli evaluated Plaintiff pursuant to a request from the Bureau of Disability Determination in May 2005.  Dr. Irilli stated that Plaintiff's "affect appeared to be appropriate and his mood was seen as stable" (Tr. 322).  He further noted that Plaintiff "sat in a calm manner" during the evaluation and that "[n]o unusual motor manifestations such as shaking, fidgeting, or pacing were noted" (Id.).  Dr. Irilli also noted that Plaintiff seemed "to have sufficient information, judgment and common sense reasoning ability to live independently," and Plaintiff reported to Dr. Irilli that he in fact had lived on his own in the past but was unable currently to do so currently because of his financial situation (Tr. 323).  Plaintiff  reported that his activities of daily living included caring for his hygiene, eating breakfast, seeing his girlfriend, cooking, cleaning, laundry, and shopping (Tr. 323-24).  Dr. Irilli administered the

WAIS-III, which indicated that Plaintiff's IQ scores – 71 Verbal, 81 Performance, and 74 Full-Scale – were in the borderline range (Tr. 325).  Dr. Irilli diagnosed Plaintiff with borderline intellectual functioning and antisocial personality disorder, and he assigned Plaintiff a GAF score of 65, which is indicative of generally mild symptoms (Tr. 327).  He opined that Plaintiff's mental abilities to relate to others and to maintain attention, concentration, persistence and pace were moderately impaired (Id.).  However, he stated that Plaintiff would be able to perform "at least simple repetitive work-like tasks" (Id.).

Dr. Haskins reviewed the evidence, including Dr. Irilli's evaluation and a report from Plaintiff's brother and completed a Psychiatric Review Technique Form and a Mental Residual Functional Capacity Assessment in June 2005 (Tr. 301-17).  Like Dr. Irilli, Dr. Haskins determined that Plaintiff had antisocial personality disorder and borderline intellectual functioning (Tr. 305, 308).  She noted that Plaintiff has had a history of drinking problems, but that Plaintiff's "brother reports that he is sober now" (Tr. 309). Dr. Haskins opined that Plaintiff had mild limitations in activities of daily living and in maintaining concentration, persistence and pace; moderate limitations in social functioning; and no episodes of decompensation (Tr. 311).  Dr. Haskins further opined that Plaintiff could "complete simple tasks at home and in the community" (Tr. 317).  She stated that Plaintiff's ability to maintain attention, concentration, persistence and pace to perform simple, repetitive tasks was adequate, but that his abilities to perform more difficult tasks were moderately impaired (Id.).  She opined that Plaintiff was capable of managing his own funds and that Plaintiff could perform simple repetitive tasks in an environment where he can primarily work independently (Tr. 317).

The ALJ also noted that Plaintiff was able to do various jobs while incarcerated.  The ALJ appears to point to this evidence as some proof that Plaintiff is able to work when he is not abusing alcohol.  The ALJ stated in giving great weight to the opinions of Dr. Irilli and Dr. Haskins that Plaintiff is capable of performing simple routine work, "[t]his is further supported by evidence during the claimant's incarceration in which he performed work at various jobs when not abusing alcohol" (Tr. 20).

The ALJ also pointed to the reports of two prison psychologists as evidence that Plaintiff's symptoms in the absence of alcohol are not disabling and in making his credibility determination.  Specifically, the ALJ stated that "[t]he ability of the claimant to function at a higher level than he asserts is also evidenced during the period that he was incarcerated" (Tr. 19).  As the ALJ noted, Tricia Hyatt, Ph.D. wrote that although Plaintiff had not been prescribed medication, he did not have suicidal ideation and appeared to be in good personal control (Tr. 19, 264).  Dr. Hyatt also indicated that Plaintiff's mood was neutral and that she estimated Plaintiff's intelligence to be low-average based on the sophistication of his vocabulary and social interaction (Tr. 19, 264).  The ALJ also noted that Plaintiff reported substance abuse and expressed an interest in drug treatment during his incarceration (Tr. 19).  Plaintiff requested a change in job assignments on January 3, 2002 from food service to a less stressful position, and his position was switched to facilities (Tr. 260).  In February 2002, Plaintiff requested another change in position – this time as a unit orderly, as it would be less stimulating and demanding (Tr. 256).  The psychologist, Dr. Clifford, reported that Plaintiff presented with a limited IQ and associated coping skills, but that he also appeared to exaggerate his disability to manipulate for

secondary gain (Tr. 256).   Dr. Clifford also reported that Plaintiff appeared to show a more sophisticated understanding of, and response to, situations than he reported (Id.).

Although the ALJ recognized that Dr. Irilli's report – like Dr. Pondillo's – contained no mention of Plaintiff's alcohol use, the ALJ noted that Plaintiff was reported to be sober at the time of that evaluation (Tr. 21).  The ALJ stated specifically with regard to Plaintiff's intellectual functioning:

> Moreover, IQ scores completed in 2005 in May and September are inconsistent and there is no organic disorder diagnosed which would account for the reduction in scores in such a short period of time.  However the evidence shows that neither Dr. Pondillo nor Dr. Irilli was informed of the claimant's heavy alcohol intake. Thus, I do not accept Dr. Pondillo's opinion of mild mental retardation (Exhibit 1F, 56).   Based on the evidence in its entirety, I find Dr. Irilli's diagnosis of borderline intellectual functioning consistent with the evidence during a period he was reported as not drinking, rather than mental retardation.   This is further supported by documentation while the claimant was incarcerated.  Specifically, he was noted by Dr. Clifford to show a more sophisticated understand or and response to situations than he reported

(Tr. 21).

As the ALJ suggests, Plaintiff's brother reported in April 2005 that Plaintiff had had a drinking problem in the past but that he was sober at the present time (Tr. 103).  Dr. Irilli's assessment was completed in May 2005 and Dr. Haskins' assessment was completed in June 2005.  Based on the proximity in time of Plaintiff's brother's report and Dr. Irilli's assessment, it was reasonable for the ALJ conclude that Plaintiff was sober at the time of that assessment.  Dr. Haskins specifically states that Plaintiff's "brother reports he is sober now" in her evaluation (Tr. 309).  By contrast, Dr. Pondillo did not complete his assessment until September of the same year.  Based on Plaintiff's testimony at the hearing that he craves alcohol "every day;" that he will buy alcohol every day if he has the money for it; that when he drinks, it will usually be a

case of beer at time; and that over the past year, he had drunk a case of beer a couple of times or more per week, the ALJ reasonably could have concluded that Plaintiff was no longer sober by the time of Dr. Pondillo's assessment (Tr. 447-48).

Although Plaintiff testified that he told Dr. Pondillo about his alcohol use, (tr. 456), there is no indication that he had done so at the time of Dr. Pondillo's assessment, and in any case, the ALJ discounted Plaintiff's credibility.  Plaintiff does not challenge the ALJ's credibility finding; thus any argument with respect to this issue is waived.  *See e.g.*, *Lambdin v. Comm'r of Soc. Sec.*, 39 Fed. Appx. 228, 229 (6th Cir. 2002) (citing *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993)).  As explained above and as the ALJ implies in his written determination, Dr. Pondillo's assessment, therefore, could be a reflection of Plaintiff's "gross" limitations – that is, a reflection of *all* of Plaintiff's limitations, including those  that result from Plaintiff's substance abuse.

The ALJ also relied upon evidence of Plaintiff's ability to work in prison and the reports of the prison psychologists in making his determination as to the extent of Plaintiff's remaining limitations in the absence of alcohol.  The Court finds it reasonable to assume that Plaintiff would not be able to sustain while incarcerated the type of heavy alcohol use he reported engaging in at the hearing.  Thus, the evidence of Plaintiff's work during his incarceration and the assessments of the prison psychologists constitute some evidence as to what Plaintiff's limitations would be in the absence of alcohol use, and it was reasonable for the ALJ to rely on this evidence in his materiality analysis.  In sum, the Court finds that substantial evidence exists in the record from which the ALJ reasonably could have determined the extent of Plaintiff's limitations when he is not using substances and that Plaintiff's limitations would not be disabling but for his alcohol abuse.

Plaintiff claims, without citing to any authority, that the ALJ erred in determining that his alcohol abuse was a contributing factor material to his disability because "this is a "medical finding," and the ALJ made this determination without the aid of a medical expert or medical testimony.  Nothing in the regulations specifically states that a finding of materiality as to a claimant's substance abuse constitutes a "medical finding," or that the ALJ necessarily must rely on the testimony of a medical expert or other medical testimony in making such a determination. Instead, an ALJ must determine, based on the record evidence, whether a claimant's substance use contributes materially to his or her disability.  *See* 20 C.F.R. § 416.935 ("If *we* determine that your remaining limitations would not be disabling, *we* will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.").  A reviewing court must let stand the findings of an ALJ if those findings are supported by substantial evidence.  As discussed above, the ALJ followed the proper procedures for determining whether Plaintiff's substance abuse is a contributing factor material to the determination of disability, and substantial evidence supports the ALJ's findings and analysis.  Thus, the Court finds that Plaintiff's argument with respect to this issue is without merit.

## V.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is not supported by substantial evidence.  Accordingly, the Court recommends the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: November 20, 2009.

15

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

16